UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANTHONY HEATH BAKER     Plaintiff
AKA ASHLEY BAKER

v.     Civil Action No. 3:18-cv-471

MICHAEL JORDAN AND DR. TANYA     Defendants
YOUNG

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

This matter is before the Court on its *sua sponte* Order requesting additional briefing on the issue of whether discovery should be re-opened under FRCP 56(d). [DE 77]. Briefing is complete and the matter is ripe. [DE 78; DE 79]. For the reasons below, the Court re-opens discovery, but limits it to the specific information identified and sought by Baker. Because the Court is re-opening discovery, it **DENIES WITHOUT PREJUDICE** Defendants' motions for summary judgment [DE 42; DE 53].

### I. BACKGROUND

Baker, an inmate in the Kentucky State Reformatory ("KSR"), identifies as a transgender woman.[1] [DE 73 at 626]. In July 2018, Baker sued Defendants Michael Jordan and Dr. Tanya Young.[2] [DE 1]. Baker alleges that Defendants Michael Jordan, KSR's Medical Director, and Dr.

---

[1] Baker is anatomically male and assigned the male sex at birth, but identifies as a woman and goes by the name Ashley. Baker requests to be identified using female pronouns. [DE 69 at 617]. The Court respects Baker's wishes and will refer to her using female pronouns throughout this Opinion. *See Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at \*1 n.1 (6th Cir. Jan. 28, 1997) (adopting a biologically male plaintiff's usage of "the feminine pronoun to refer to herself"); *Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521, 528 (N.D. Ohio 2020) (same).

[2] Baker initially sued Michael Jordan, Tanya Young, Dawn Patterson, Christy Jolly, and "all other unknown John, Mary Does." [DE 1 at 1]. After its initial screening, the Court dismissed the claims against Dawn Patterson, Christy Jolly, and "all other unknown John, Mary Does." [DE 10 at 57].

Young, Baker's treating psychologist, violated her Eight Amendment rights by failing to provide hormone treatment for her "transgender disorder." *Id.* at 5.

The Court issued its Scheduling Order on December 10, 2018. [DE 11]. In the Scheduling Order, the Court set a pretrial discovery deadline of April 5, 2019 and a dispositive motion deadline of June 3, 2019. *Id.* at 59-60. Other than serving ten interrogatories on Defendant Young, Baker apparently conducted no other discovery. [DE 53-3; DE 79 at 7-8].

Noting the "complexity of the issues presented in" her case, the Court appointed her pro bono counsel on June 1, 2020. [DE 67 at 614]. That said, the Court did not appoint Baker counsel until after discovery had closed and Defendants had filed their motions for summary judgment.

While pro se, Baker responded to Defendants' motions for summary judgment. [DE 63]. With the Court's permission, Baker's counsel later filed a supplemental response. [DE 72]. In a footnote in her supplemental response, Baker asserts:

> As set forth herein, Plaintiff believes that the Defendants have failed to carry their burden for a summary judgment, and that the existing factual record requires that their motions be denied. However, it is also apparent that limited written discovery was conducted in this case and no depositions were taken, likely because this was a *pro se* matter. Thus, there are unanswered questions with respect to the decisions of medical providers and why the resolution of the grievance was not fully implemented. Under a scenario in which the Court concluded that the factual was insufficiently developed for the Plaintiff to be able to oppose the motion for summary judgment, it would be appropriate to treat this Memorandum as providing grounds for further discovery pursuant to FRCP 56(d).

[DE 73 at 641].

On July 27, 2021, the Court ordered the parties to brief the issue of whether discovery should be re-opened under FRCP 56(d). [DE 77].

## II. DISCUSSION

### A. FRCP 56(d)

#### 1. Procedural Requirements

Fed. R. Civ. P. 56(d) provides that if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." "The burden is on the party seeking additional discovery to demonstrate why such discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). While the nonmoving party usually must file a formal affidavit that states "the materials [it] hopes to obtain with further discovery," *id.*, FRCP 56(d) is also satisfied if the party complies with its "substance and purpose" by "informing the district court of her need for discovery prior to a decision on the summary judgment motion." *Moore v. Shelby Cty.*, 718 F. App'x 315, 319 (6th Cir. 2017) (internal quotation marks and formatting omitted). In *Moore*, the Sixth Circuit concluded that the plaintiff made a sufficient request for additional discovery when she did so in a summary judgment motion but did not file a FRCP 56(d) affidavit. *Id.* Granting summary judgment simply because the plaintiff did not file a "redundant" FRCP 56(d) affidavit, the court held, would "unduly exalt form over substance." *Id.*

FRCP 56(d) considers the drastic nature of granting summary judgment by allowing the Court to ensure that it "affords the parties adequate time for discovery, in light of the circumstances of the case." *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995). FRCP 56(d) offers the Court broad discretion to grant or deny additional time before ruling on summary judgment so long as its decision is not "arbitrary, unjustifiable, or clearly unreasonable." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014).

Baker filed an affidavit with her supplemental response to Defendants' motions for summary judgment. [DE 73-1]. She did not, however, file an affidavit with her FRCP 56(d) motion. Yet Baker has complied with the procedural requirements of FRCP 56(d) by filing a motion setting forth the specific information she needs to respond to Defendants' motions for summary judgment. In her motion, which discusses her supplemental response to the motions for summary judgment and the affidavit attached to it, Baker asserts:

> Ashley's supplemental response, and the accompanying affidavit, lay out numerous gaps in the evidentiary record that would benefit from additional discovery. For example, Ashley repeatedly explained that "there are numerous other references in [her] medical records to gender identity disorder and gender issues," yet she was denied the hormone therapy she sought. There is little in the factual record to explain this decision, because Dr. Young and Dr. Meek have never been deposed. Additional discovery would be helpful to the parties and the court on this issue.
>
> Another gap in the record relates to deliberate indifference. In her supplemental response, Ashley noted that, if a "factfinder determines that she should have received hormone therapy, a question of fact remains as to whether prison officials' repeated refusals to provide treatment was done with deliberate indifference in violation of the Eighth Amendment." Here, too, the record has little to say about any indifference the medical and prison officials may have displayed because those officials have never been deposed. At the very least, Ashley should be able to conduct targeted discovery on this key issue.
>
> A third issue that Ashley identified as warranting additional discovery is the intention of the parties when they resolved the grievance. In her supplemental response, Ashley explained that she "was led to believe that she had reached an agreement [about her grievance] with prison officials" that those officials later failed to follow. As Ashley explained at length, questions exist about the nature of the agreement Ashley reached with prison officials, and additional discovery would be helpful in developing the factual record on this question. In short, Ashley did not merely make broad allegations about the need for additional discovery—she provided a detailed analysis of the record—and its gaps—in a comprehensive filing.
>
> . . .
>
> Throughout her supplemental response, Ashley explained at length the factual record and the many unanswered questions in it. She explained why these unanswered questions are sufficient to create a factual dispute that—by itself— should be enough for this Court to deny the defendants' motions for summary judgment. Ashley's robust supplemental response, and the accompanying affidavit,

4

> give a clear picture of the gaps in this case and the ways additional discovery could help fill them.
>
> . . .
>
> Should this Court grant Ashley's FRCP 56(d) motion, Ashley would like to depose medical professionals who were directly involved in treating her, depose prison officials who were directly involved in handling the grievance that is the basis of this lawsuit, and send limited written discovery to identify other prison officials who may have knowledge of this grievance. This written discovery would also include requests for documents related to KSR policies, KSR staff training on transgender issues, and data on outcomes of other people incarcerated at KSR who have sought hormone replacement therapy. Ashley requests an additional ninety (90) days for this discovery.

[DE 79 at 703-05 (internal citations omitted)].

Baker's motion "demonstrate[s] [her] need for further discovery with particularity and by affidavit or motion." *Williams v. Goodyear Tire & Rubber Co.*, No. 11-2-35-STA, 2012 WL 1228860, at *3 (W.D. Tenn. Apr. 11, 2012). Baker describes the discovery she seeks, specifically articulates the basis for her request, and explains the discovery's necessity. As a result, Baker has cleared FRCP 56(d)'s procedural hurdle.

2. Relevant Factors

When, as here, the party seeking relief under FRCP 56(d) has complied with its procedural requirements, "the Sixth Circuit has provided guidance as to the factors a court should evaluate in considering whether to permit the requested discovery." *Cressend v. Waugh*, No. 2:09-CV-01060, 2011 WL 883059, at *2 (S.D. Ohio Mar. 11, 2011) (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) ). These factors include (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period has lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the party moving for summary judgment was responsive to discovery requests. *Id.* (internal quotation marks, formatting, and citation omitted).

5

If the party seeking relief under FRCP 56(d) has not received "a full opportunity to conduct discovery," denial of that party's FRCP 56(d) motion and ruling on a summary judgment motion would likely constitute an abuse of discretion. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (internal quotation marks omitted).

Baker seeks to: 1) "depose medical professionals who were directly involved in treating her; 2) "depose prison officials who were directly involved in handling the grievance that is the basis of this lawsuit"; 3) "send limited written discovery to identify other prison officials who may have knowledge of this grievance. This written discovery would also include requests for documents related to KSR policies, KSR staff training on transgender issues, and data on outcomes of other people incarcerated at KSR who have sought hormone replacement therapy." [DE 79 at 704-05].

### a. When Baker learned of the issue that is the subject of the desired discovery

"This factor primarily pertains to situations where there was something that prevented a party from learning about a subject of desired discovery until after some discovery had already been sought." *Doe v. City of Memphis*, 928 F.3d 481, 492–93 (6th Cir. 2019). Baker concedes that her "complaints about her treatment (or lack thereof) at the hands of prison doctors and officials formed the basis of her allegations." [DE 79 at 706]. But Baker argues that the Court should allow her to depose Dr. Young because Dr. Young only offered a "conclusory response" to her interrogatories. *Id.* Defendants argue that this factor weighs against Baker because she "knew of the factual issues relating to her claims of inadequate medical treatment, as well as Defendants' affirmative defenses (including PLRA exhaustion) from the outset of this litigation which commenced more than three years ago." [DE 78 at 792]. Baker's assertion that this factor weighs in her favor because Dr. Young offered a "conclusory response" to her interrogatories is

6

insufficient to establish that "there was something that prevented [her] from learning about a subject of desired discovery until after some discovery had already been sought." *Doe*, 928 F.3d 481 at 492–93. As a result, this factor does not weigh in her favor.

### b. Whether the desired discovery would change the Court's ruling

Baker claims that she faced cruel and unusual punishment in violation of her rights under the Eighth Amendment. [DE 1 at 4]. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05.

Defendants argue that "Plaintiff has not provided sufficient information regarding the desired discovery for the Court to make a determination whether it would alter any summary judgment ruling, and because no such evidence (even if discovery were reopened) would do so." [DE 78 at 695]. Baker responds that "[i]f [she] is permitted to depose the medical professionals that treated her, she . . . may produce evidence that they acted with deliberate indifference toward her. If she is permitted to depose those involved in the grievance procedure, she may be able to show that her understanding—that she should be able to see a different medical provider than the one she had been seeing while incarcerated—was shared by prison officials." [DE 79 at 706-07]. Baker also argues that "reviewing additional KSR documents may show that staff received inadequate training on the issues around transgender prisoners, that the policies in place were inadequate, or other facts that bear upon the current case." *Id.* Because the specified discovery could shed additional light on the grievance process and whether Defendants were deliberately

7

indifferent, the Court agrees with Baker that it could impact how the Court rules on Defendants' motions for summary judgment. The second factor weighs in her favor.

### c. The length of the discovery period

Defendants assert that the "the four month discovery period in this case is either neutral or weights slightly in favor of denying the request to reopen discovery." [DE 78 at 693]. Four months may be enough time to conduct discovery in some cases. But here, where Baker was an incarcerated pro se plaintiff for the majority of the case, the fact that discovery was only open for four months supports reopening it. *See, e.g.*, *Calloway v. Scribner*, No. 1:05-CV-01284-BAM PC, 2014 WL 1317608, at *1 (E.D. Cal. Mar. 27, 2014) ("Courts have permitted the reopening of discovery where a state prisoner proceeding pro se moved to reopen discovery following the appointment or retention of counsel after the discovery cutoff date"); *Draper v. Rosario,* 2013 WL 6198945, at *1–2 (E.D.Cal. Nov.27, 2013) (court permitted pro se prisoner to reopen discovery when he acquired pro bono counsel after the discovery cut-off date; counsel alone did not entitle plaintiff to additional discovery, but limited additional discovery would serve the ultimate resolution of case on the merits).

### d. Whether Baker was dilatory in her discovery efforts

Baker argues that she attempted to "comply with the Court order and conduct discovery" by serving interrogatories. [DE 79 at 708]. Defendants disagree, arguing that Baker conducted "*no* discovery until less than one week before the close of the discovery period; thus, this factor weighs against reopening discovery." [DE 78 at 694]. Baker asserts that "[p]eople who are incarcerated have limited hours that they can access libraries and other materials they need to successfully prosecute their cases." [DE 79 at 707]. The Court has no reason to doubt that this is true. The Court also recognizes that Baker had only four months to conduct discovery and that

she was required to do so while incarcerated and prosecuting her case pro se. Moreover, Baker's medical records, which Defendants submitted in support of their motions for summary judgment, appear to support her claims that she is intellectually disabled. [DE 43 at 364]. Based on these considerations, the Court cannot find that Baker was dilatory in her discovery efforts. As a result, this factor weighs in her favor.

*e. Whether Defendants were responsive to discovery requests*

Baker argues that this favor weighs in her favor because, although Defendants responded to her requests, they did "not result in comprehensive information." [DE 79 at 708]. Because Defendants did respond to her limited requests for discovery, this factor weighs against Baker.

3. Balancing the Factors

Three of the five factors weigh in her favor and two weigh against her. Having balanced the factors, the Court will allow Baker to pursue the specified discovery. In a footnote in their brief, Defendants request that "[t]o the extent the Court does grant Plaintiff's request to reopen discovery," they "be permitted to conduct discovery to the same degree as that permitted Plaintiff." [DE 78 at 682]. The Court is re-opening discovery but is limiting it to the specific information identified and sought by Baker. Both parties may conduct additional discovery on these specified issues as the information sought by Baker may require Defendants to seek additional discovery on these same topics. The parties shall be given 30 days to confer and submit a proposed discovery order to the Magistrate Judge to be assigned to this case.

After discovery is conducted, the factual record will likely be different than it was when Defendants first filed their motions for summary judgment. As a result, and under FRCP 56(d)(1), the Court will deny without prejudice Defendants' motions for summary judgment.

## III. CONCLUSION

For these reasons, **IT IS ORDERED** that:

1) Discovery is **RE-OPENED** so that the parties may conduct the following additional discovery: depose medical professionals who were directly involved in treating her, depose prison officials who were directly involved in handling the grievance that is the basis of this lawsuit, and send written discovery to identify other prison officials who may know about this grievance. This written discovery may include requests for documents related to KSR policies, KSR staff training on transgender issues, and data on outcomes of other people incarcerated at KSR who have sought hormone replacement therapy.

2) Defendants' motions for summary judgment [DE 42; DE 53] are **DENIED WITHOUT PREJUDICE**.

3) This matter is **REFERRED** to Magistrate Judge Regina Edwards pursuant to 28 U.S.C. § 636(b)(1)(A) for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all nondispositive matters, including discovery issues. Magistrate Judge Edwards is further authorized to conduct one or more settlement conferences in this matter.

4) The parties shall have thirty days to **CONFER AND SUBMIT** a proposed discovery order to the Magistrate Judge to be assigned to this case.

*Rebecca Grady Jennings, District Judge*
*United States District Court*

August 25, 2021

10