UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANTHONY HEATH BAKER                                                    Plaintiff
AKA ASHLEY HEATH BAKER

v.                                                     Civil Action No. 3:18-cv-471

MICHAEL JORDAN, *ET AL.*                                            Defendants

* * * * *

## MEMORANDUM OPINION AND ORDER

Defendants Tanya Young ("Young"), in her individual capacity, and Russell Williams ("Williams"), in his official capacity, move for summary judgment.  [DE 121-1].  Defendants Michael Jordan ("Jordan"), in his individual capacity, and John Brinker ("Brinker," together with Young, Williams, and Jordan, the "Defendants"), in his official capacity, also move for summary judgment.  [DE 122].  Plaintiff Ashley Heath Baker ("Baker") responded to both motions [DE 125] and Defendants replied [DE 127; DE 128].  Briefing is complete, and the matter is ripe.  For the reasons below, Defendants' Motions for Summary Judgment [DE 121-1; DE 122] are **DENIED**.  The parties' Joint Motion to Hold Trial Deadlines in Abeyance [DE 132] is **DENIED AS MOOT**.

## I.       BACKGROUND

Baker, an inmate with the Kentucky Department of Corrections ("KDOC"), was housed at the Kentucky State Reformatory ("KSR").  [DE 73-1 at 644].  Baker asserts that she has felt like a woman trapped in a man's body her entire life.  [*Id.*].  As a teenager, Baker began to use her preferred name, "Ashley," and told her counselors she was a girl.  [*Id.*].  Baker continued to identify as a woman into adulthood and became interested in medical treatment options that would allow her gender identity to match her body more closely.  [*Id.*].  She was prescribed an estrogen patch

1

but stopped using it because she did not believe it was making her appear more feminine.  [*Id.*]. Baker continued to identify as a woman in 2010 when she was sentenced and remanded to the custody of the KDOC.  [*Id.*].  She also alleges that she suffers from learning disabilities and a low IQ. [DE 125 at 1429].

On June 23, 2015, Baker reported to Licensed Psychology Associate Chris Wiggins ("Wiggins") that she was transgender and interested in transitioning.  [DE 121-1 at 1092].  On October 29, 2015, Dr. Maureen Khalil ("Khalil"), a psychiatrist at KSR, diagnosed Baker with "gender identity disorder in adolescents or adults" and entered her diagnosis into KDOC's medical records system.  [DE 125-2 at 1465].  Although Baker frequently met with KSR doctors [DE 121-1 at 1092–1097], she alleges she was not receiving care to address her gender identity disorder ("GID") [DE 125 at 1409].  On June 20, 2016, Baker filed Grievance 16-0714 alleging that she was "being denied medical treatment for [her] medical condition of Transgender Disorder."  [DE 125-5 at 1544].  Defendant Young, a KDOC psychologist, responded to Grievance 16-0714: "The plan is to assess Anthony Baker for possible referral to the Transgender Committee. Dr. Coleman, Psy.D. will overseeing [sic] this follow up."  [*Id.*].  Baker reported to Khalil that she met with Dr. Coleman and an outside therapist would be brought in to provide therapy related to her GID.  [DE 125-2 at 1470].  Baker was sent to an outside psychiatrist to discuss bipolar disorder, anxiety disorder, and nightmares, but there is no indication she saw an endocrinologist or other outside provider who could evaluate her need for hormonal replacement therapy.  [DE 121-2 at 1128]. There is also no evidence that KDOC presented Baker's case to the Therapeutic Level of Care ("TLOC") Committee.  [DE 125 at 1411].

On September 29, 2017, Baker filed Grievance 17-1405.  [DE 125-8].  Baker asserted that she was not satisfied with the resolution of Grievance 16-0714. [*Id.* at 1558].  On October 9, 2017,

Baker met with Dr. Steven Shelton.  [DE 125-2 at 1457].  At that time, Baker had been diagnosed with GID and had a follow-up appointment scheduled in three months.  [*Id.*].  On October 10, 2017, KDOC held a TLOC meeting about Baker's request for hormone replacement therapy.  [DE 125-9 at 1560].  The report reflects that Young did not believe Baker met the criteria for GID. [*Id.*].  The TLOC Committee followed Young's recommendation and denied Baker's request. [*Id.*].

On November 22, 2017, Baker filed Grievance 17-1355, the operative grievance for this action, stating, "I am assigned transgender, and to deny me necessary medical care is cruel and unusual punishment for my transgender issue."  [DE 125-11 at 1564].  To remedy this issue, Baker requested psychological treatment, hormone therapy, hormone treatment, gender affirming care, laser hair removal, and transitioning meds.  [*Id.*].  After interviewing Baker about her grievance [DE 125-12, Jordan Dep. Tr. at 1573–74], Jordan wrote that Baker was scheduled to be evaluated by her primary care provider on January 17, 2018 [DE 125-11 at 1564].  At that visit on January 17, Baker was evaluated by nurse practitioner Jeff Ingram ("Ingram").  [DE 125-2 at 1447]. Although Baker was supposed to be assessed for hormone therapy, there is no indication from the medical records that Ingram did more than a general physical evaluation.  [*Id.* at 1447–49].

Because Baker believed she was not properly evaluated for hormone therapy, Baker appealed Grievance 17-1355.  [DE 125-11 at 1565].  The Grievance Committee concurred with Jordan's proposed recommendation.  [*Id.* at 1566].  Baker's case was scheduled to be discussed at a team meeting, after which Baker would be scheduled to see the appropriate provider.  [*Id.*]. Satisfied with the promise of being seen and evaluated for hormone therapy, Baker accepted this resolution and did not appeal further.  [DE 125-13 at 1587].  Baker would have had three days to appeal the Grievance Committee's resolution.  [DE 121-4 at 1265].  Baker alleges that prison

3

officials subsequently failed to implement any aspects of the agreed resolution to Grievance 17-1355. [DE 125 at 1413].

On March 16, 2018, after conferring with Young, Dr. Craig Meek ("Meek") informed Baker that she would not be treated for GID. [DE 125-2 at 1460]. Meek and Young had concluded that any distress from which Baker might be suffering resulted from her alleged rape instead of GID.[1] [*Id.*]. They also believed Baker "was doing fine as a transgender individual." [*Id.*]. Baker's diagnosis was changed from GID to unspecified disorder of adult personality and behavior, dysthymic disorder, and chronic post-traumatic stress disorder. [*Id.*]. Meek also assured Baked that his case would be presented to the TLOC Committee [*id.*], but there is no evidence that her case was brought before the Committee. Baker continued to live without gender-affirming care until released in 2020. [DE 73-1].

Baker was again remanded to the custody of the KDOC and is currently housed at the Little Sandy Correctional Complex. [DE 125 at 1414]. Baker continued to have multiple doctors' visits while incarcerated. [DE 121-3]. Her records indicate that she was given the GIDYQ, a gender identity questionnaire, and received a score of 1.77, "which is strongly suggestive of gender dysphoria." [*Id.* at 1212]. Baker's medical records reveal conflicting diagnoses after follow-up visits with different physicians. [*Id.*]. Yet, Baker's expert, Dr. Tracy D. Gunter ("Gunter"), notes that the administration of the GIDYQ "stands alone in the record as being informed by the administration of a standardized questionnaire, which is a strategy for decreasing bias that interviewers may bring to any evaluation." [DE 125-4 at 1514].

Baker filed this action pro se on July 18, 2018. [DE 1]. Baker argued that Defendants violated her Eighth Amendment rights by failing to provide hormone treatment for her

---

[1] Baker alleged that she was repeatedly raped by her cellmate in 2015. [DE 125-2 at 1451].

"transgender disorder." [*Id.* at 5].  The Court appointed Counsel on June 1, 2020.  [DE 67].  With the assistance of Counsel, Baker supplemented her response to Defendants' original motions for summary judgment.  [DE 73].  The Court denied those motions without prejudice to allow for additional discovery.  [DE 80].  Defendants have renewed their motions for summary judgment. [DE 121-1; DE 122].

## II.   <u>STANDARD</u>

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion.  *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party.  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).  "The mere existence of a scintilla of evidence in support of the [nonmoving

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### III.   <u>MOTIONS FOR SUMMARY JUDGMENT [DE 121-1; DE 122]</u>

Defendants first argue that Baker failed to exhaust her administrative remedies under the Prison Litigation Reform Act ("PLRA"). [DE 121-1 at 1100; DE 122 at 1336]. Defendants next argue that Baker's Eighth Amendment claim fails on its merits. [DE 121-1 at 1110; DE 122 at 1339]. They also argue that Young is entitled to qualified immunity [DE 121 at 1118] and that Baker's official capacity claims must fail. [DE 121-1 at 1119; DE 122 at 1350]. In response, Baker contends that administrative remedies were unavailable to her because of Defendants' machinations and misrepresentations. [DE 125 at 1427]. She also contends that a reasonable juror could conclude that Defendants violated the Eighth Amendment. [*Id.* at 1416]. She refutes the legal bases of Young's qualified immunity defense and Defendants' arguments regarding Baker's official capacity claims.

### A.   Exhaustion of Administrative Remedies Under the PLRA

Defendants argue that Baker's claim is barred by the PLRA because she failed to exhaust her administrative remedies for Grievance 17-1355. [DE 121-1 at 1100; DE 122 at 1336]. Baker contends that administrative remedies for her grievance were unavailable because of Defendants' machinations and misrepresentations. [DE 125 at 1427].

6

The PRLA requires a prisoner to exhaust all available administrative remedies before commencing an action related to prison conditions.  The statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . ., or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

The Supreme Court, interpreting § 1997e, has made clear: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison.  *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006).

In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).  To exhaust a claim, a prisoner must proceed through all the steps of a prison's administrative process. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). That said, an inmate need only exhaust those remedies that are "available"; if an administrative remedy "is not capable of use to obtain relief," § 1997e will not act as a barrier to suit.  *Ross v. Blake*, 578 U.S. 632, 643 (2016).  An inmate must establish affirmative efforts to comply with an administrative procedure before claiming that he is excused from exhausting that procedure based on its unavailability.  *Napier v. Laurel Cty.*, 636 F.3d 218, 223 (6th Cir. 2011).   In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but

no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643. Administrative remedies that prison officials prevent an inmate from utilizing are unavailable under § 1997e. *See Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).

Baker attempted to use the prison grievance process to resolve her repeated quests and denials for treatment related to GID. [DE 125-11]. After filing Grievance 17-1355, Jordan stated—in writing—that Baker would be evaluated by her primary care provider for hormone therapy on January 17, 2018. [DE 125-11 at 1564]. Yet Baker's medical records suggest that she was not evaluated for hormone therapy at this visit. [DE 125-2 at 1447–49]. Because she was not evaluated, Baker appealed Jordan's informal resolution. [DE 125-11 at 1565]. In response, the Grievance Committee stated that it "[c]oncur[red] with the informal resolution." [*Id.* at 1566]. This could only mean that the Grievance Committee agreed that Baker should be evaluated by a primary care provider for hormone replacement therapy. Baker would be scheduled to see the appropriate provider after her case was discussed in a multidisciplinary team meeting. [*Id.*].

Baker was satisfied with the outcome of her appeal to the Grievance Committee and saw no reason to further appeal. [*Id.*]. However, Baker was never discussed by the multidisciplinary team as described in Grievance 17-1355 [DE 125-15 at 1594], and there is no evidence that Baker was scheduled with a primary care provider to be evaluated for hormone therapy. Rather than evaluate Baker for hormone therapy, Meek told Baker that any distress she was feeling was due to an alleged rape. [DE 125-2 at 1460]. This diagnosis was based solely on previous visits with Meek and Young, not any subsequent evaluation. [*Id.*].

It is undisputed that Baker failed to exhaust Grievance 17-1355 under the PLRA. [DE 125 at 1432]. Instead, Baker must rely on an exception to the exhaustion requirement. The Supreme

Court has held that "if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" then a remedy is not available and exhaustion is unnecessary. *Ross*, 578 U.S. at 644, n. 3 (quoting *Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015)). Administrative remedies may be unavailable if Defendants thwarted Baker's affirmative efforts to exhaust her grievance. *See Does 8-10 v. Snyder*, 945 F.3d 951, 965 (6th Cir. 2019). Baker took affirmative steps to appeal Grievance 17-1355 when Jordan's resolution was not implemented. [DE 125-11]. However, there is no evidence that Jordan's or the Grievance Committee's resolutions were implemented. By the time Baker would have realized that she needed to appeal, the deadline would have elapsed. [DE 121-4 at 1265].

In *Lamb v. Kendrick*, an inmate in restrictive housing was not given access to the proper paperwork to file a grievance. *See* 52 F.4th 286, 297 (6th Cir. 2022). Inmates in restrictive housing were required to request paperwork from guards. *See id.* The inmate asserted that guards denied his access to the necessary paperwork. *See id.* They also told the inmate that filing an appeal would be futile because the deadline had passed. *See id.* However, the deadline had not passed, and the inmate could have still appealed his grievance. *See id.* The Sixth Circuit held that the guards' misrepresentations thwarted the inmates' attempts to appeal his grievance, which rendered the administrative remedies unavailable. *See id.* The facts surrounding Baker's appeal are similar to *Lamb*. Baker made affirmative efforts to appeal Grievance 17-1355, but her attempts were thwarted by statements that she would be evaluated specifically for hormone therapy. [DE 125-11 at 1566]. Telling an inmate that their request will be granted and taking no action is substantively no different than misrepresenting the deadline to appeal. *See Lamb*, 52 F.4th at 297. Baker was thwarted from taking advantage of administrative remedies, making the administrative

process unavailable to her. *Ross*, 578 U.S. at 643. As a result, Baker is excused from the exhaustion requirements of § 1997e. *See id.*

Defendants argue that Baker relies on the oral representations of others to create an issue of fact regarding exhaustion. [DE 127 at 1688]. Baker stated in her affidavit that "I was told that I would be able to see a different doctor. I was also told that I would go in front of a board to discuss hormone treatment. These promises were not kept." [DE 73-1 at 645]. However, the Court need not rely on this statement to find an exception to the exhaustion requirement. Instead, the body of Grievance 17-1355 states that Baker will see her primary provider and be evaluated for hormone therapy. [DE 125-11 at 1566]. As noted above, her medical records do not indicate that the proposed resolution was implemented. [DE 125-2]. Even if the Court were to rely on Baker's affidavit, the Sixth Circuit has held that an inmate's affidavit can be enough to create an issue of fact regarding whether administrative remedies were available to an inmate. *See, e.g.*, *Lamb*, 52 F.4th at 297.

Defendants also allege that Defendants Jordan and Brinker should be dismissed because they were not specifically named in Grievance 17-1355. [DE 122 at 1337]. A grievance must identify the individuals who may eventually be sued and give sufficient notice of the matter being grieved. *See Bell v. Konteh*, 450 F.3d 651, 653–54 (6th Cir. 2006). "Exhaustion is not necessary for unavailable remedies, but we require evidence of affirmative efforts to follow the procedures before addressing the question of unavailability." *Rivers v. Turner*, No. 16-4241, 2017 WL 9249945, at *2 (6th Cir. Dec. 15, 2017).

Baker made affirmative efforts to comply with the exhaustion requirements of the PLRA. *See Napier*, 636 F.3d at 223. Baker followed the administrative requirements by filing a grievance and appealing to the Grievance Committee. [DE 125-11 at 1565]. Baker was not required to

exhaust her administrative remedies since the Court has held that they were unavailable. *See Rivers v. Turner*, 2017 WL 9249945, at *2. Although Baker did not explicitly name Jordan in the grievance, Jordan was responsible for facilitating treatment for inmates with GID. [DE 125-12, Jordan Dep. Tr. at 1571]. Baker's grievance was clearly directed at those responsible for guiding her care related to GID. [DE 125-11 at 1565 ("There was no appointment with my primary care provider . . . for evaluation for the need for hormonal therapy."). Moreover, Jordan provided the initial response to Grievance 17-1355. [*Id.* at 1564]. Because Jordan directed treatment for individuals with GID and because Jordan provided the initial response to Baker's grievance, Jordan was likely on notice of Baker's complaints.

### B. Eighth Amendment Claim

Defendants argue that no reasonable juror could find that they violated the Eighth Amendment when treating Baker. [DE 122 at 1339]. Young also argues that she could not have been deliberately indifferent to Baker's gender dysphoria because she did not have GID. [DE 121-1]. In response, Baker contends that a reasonable juror could conclude that Defendants displayed a deliberate indifference to Baker's medical conditions by refusing to provide her with gender-affirming care. [DE 125 at 1416].

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–104 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component,

11

the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The objective component may be met where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to 'conclude that a prison official

knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)). However, "an inadvertent failure to provide adequate medical care" is not a constitutional violation. *Estelle*, 429 U.S. at 105 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

"[T]he right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). A misdiagnosis that resulted in an inadequate course of treatment causing the inmate to suffer considerably would not constitute deliberate indifference. *See, e.g.*, *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. 1997). If an inmate received some treatment for her condition, then she must demonstrate her care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." S*ee Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Eighth Amendment Claim—Objective Component

Young argues that Baker cannot satisfy the objective component of the Eighth Amendment inquiry because Baker did not suffer from GID when she visited Young. [DE 121-1 at 1114]. Jordan contends that Baker merely disagrees with treatment decisions [DE 122 at 1241] and that Baker failed to cite the necessary expert testimony [*id.* at 1344]. Baker asserts she not only suffered from GID, but that the Courts have recognized GID as a serious medical condition. [DE 125 at 1418].

GID has been recognized as a serious medical need by some courts. *See, e.g.*, *Murray v. U.S. Bureau of Prisons*, No. 95 5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997); *Miller v. Stevenson*, No. 1:18-CV-702, 2018 WL 3722164, at *5 (W.D. Mich. Aug. 6, 2018) ("Since

transsexualism is a recognized medical disorder, and transsexuals often have a serious medical need for some sort of treatment, a complete refusal by prison officials to provide a transsexual with any treatment at all would state an Eighth Amendment claim for deliberate indifference to medical needs."). A person with GID may experience severe anxiety, depression, or other psychological disorders and may attempt to commit suicide. *See Fields v. Smith*, 653 F.3d 550, 553 (7th Cir. 2011).

On June 23, 2015, Baker reported to Wiggins that she was transgender and interested in transitioning. [DE 121-1 at 1092]. Baker's medical records indicate that Khalil diagnosed her with GID in October 2015. [DE 125-2 at 1465]. Young and Meek later disagreed that Baker suffered from GID. [*Id.* at 1460]. Yet Baker was again diagnosed with GID after Young challenged the diagnosis. [DE 121-3 at 1212]. Accordingly, a reasonable jury could find that Baker suffered from a serious medical condition.[2] *See Murray*, 1997 WL 34677, at *3.

Jordan also argues that Baker failed to present evidence that (1) Baker's proposed treatment plan was necessary, (2) failure to provide gender-affirming care was grossly incompetent, and (3) Defendants' gross incompetence caused Baker's harm. [DE 122 at 1344]. Jordan cites these factors because he argues that this is an adequacy-of-care case much like *Rhinehart*. [DE 122 at 1344]. In *Rhinehart*, an inmate argued that he received no treatment for his end-stage liver disease. *See* 894 F.3d at 739. However, the medical records demonstrated that the inmate's medical condition had been constantly monitored and treated. *See id.* The Sixth Circuit refused to find that the inmate was receiving no care and classified it as an adequacy-of-care case. *See id.* at 739–40. Baker's situation is different from *Rhinehart* because she has received no care for GID

---

[2] If the Court were to accept Young's argument, then any physician could avoid an inmate's Eighth Amendment claim simply by removing a diagnosis for a serious medical condition. No inmate could ever bring a successful Eighth Amendment claim related to medical care under such a framework.

diagnosis despite more than one diagnosis. The Sixth Circuit has held that an inmate can prove the objective component by showing the prison failed to provide treatment for a serious medical condition that a physician diagnosed. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896–99 (6th Cir. 2004). Accordingly, Baker is not required to meet the same requirements as articulated in *Rhinehart* for adequacy-of-care cases. *See* 894 F.3d at 739 ("In assessing the Rhineharts' claims, we must keep in mind the distinction 'between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

### 2. Eighth Amendment Claim Against Young—Subjective Component

Young argues that Baker could not satisfy the subjective component of the Eighth Amendment test because Baker did not have GID. [DE 121-1 at 1117]. In response, Baker contends that Young knew she was suffering from GID and acted with deliberate indifference. [DE 125 at 1419].

To overcome Young's motion for summary judgment, Baker must put forth some evidence showing that Young had "a sufficiently culpable state of mind" when she denied Baker gender-affirming care. *Bargery*, 207 F.3d at 867. To show Young acted with deliberate indifference, Baker must put forth evidence revealing more than mere negligence. *Farmer*, 511 U.S. at 835. Baker may satisfy this requirement with circumstantial evidence. *Rhinehart*, 894 F.3d at 738.

Young concluded in her professional judgment that Baker did not suffer from GID. [DE 121-5 at 1276]. Young also arranged to have Baker evaluated by Meek for gender dysphoria. [*Id.*]. Meek's notes from his December 8, 2017 meeting with Baker state that Baker suffered from several psychological problems. [DE 121-2 at 1138]. Meek noted that Baker identified as transgender but concluded that Baker did not suffer from GID. [*Id.*].

15

That said, Baker's own affidavit states that Young laughed at her when she sought treatment for GID and stated that Baker did not suffer from gender dysphoria. [DE 73-1 at 645]. Although Young expressed her views to the TLOC Committee that Baker did not suffer from GID, she did not explain that Baker had been diagnosed with GID by Khalil. [DE 121-8 at 1329]. When Baker met with Meek after appealing Grievance 17-1355, Young had already spoken with Meek and advised against a diagnosis of GID. [DE 125-2 at 1460]. Expert witness Gunter also concluded that Young and Meek failed to consider all the areas of distress in Baker's life. [DE 125-4 at 1511–12]. This error led Meek and Young to disregard GID despite the diagnosis being made by prior providers. [*Id.* at 1512]. Applying the correct criteria, expert witness Dr. Robert Campbell found that "Baker meets the criterion for gender dysphoric disorder." [DE 125-17 at 1612]. He also concluded that Baker's "inner conflict over her gender identity is manifest in the myriad of psychiatric diagnoses that she has received." [*Id.*].

Ultimately, the  subjective component of this Eighth Amendment analysis comes down to Baker's and Young's strikingly different characterizations of the same facts.  Baker contends that Young deliberately stood in the way of her evaluation and treatment for GID.  [DE 125 at 1419]. Looking at the same facts, Young contends that Baker never suffered from GID and was not entitled to treatment.  [DE 121-1 at 1117].  In *Parsons v. Caruso*, 491 F. App'x 597 (6th Cir. Aug. 7, 2012), the Sixth Circuit allowed an inmate's Eighth Amendment claim to proceed based on similar factual uncertainties.  In *Parsons*, an inmate suffering from seizure disorder died of a seizure after not receiving his seizure medication for three days during a transfer between facilities. *See id.* at 599–601.  The Court held that there was a question of fact as to whether a medical intake nurse was aware of the obvious risk to the inmate from going off the medication and made a conscious choice to disregard the risk by not obtaining the medication from in-house stocks and

16

allowing the inmate to wait longer until the medications arrived from an outside pharmacy. *Id*. at 604. The nurse's testimony that she did not believe the situation was an emergency, *id.* at 599, was insufficient to support summary judgment. At this stage in the proceedings, the Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams*, 227 F.3d at 710. Accordingly, a reasonable jury could find that Young acted with deliberate indifference based on the facts in the record. *Liberty Lobby*, 477 U.S. at 252.

### 3.   Eighth Amendment Claim Against Jordan—Subjective Component

Jordan contends that no reasonable jury could conclude that any Defendant acted with the appropriate mental state for deliberate indifference. [DE 122 1348–49]. In response, Baker argues that Jordan acted with deliberate indifference by failing to follow through on commitments made to Baker to ensure access to treatment of her GID. [DE 125 at 1424].

To overcome Jordan's motion for summary judgment, Baker must put forth some evidence showing that Jordan had "a sufficiently culpable state of mind" when he failed to follow through on ensuring Baker's access to gender-affirming care. *Bargery*, 207 F.3d at 867. To show Jordan acted with deliberate indifference, Baker must put forth evidence indicating more than mere negligence. *Farmer*, 511 U.S. at 835. Baker may satisfy this requirement with circumstantial evidence. *Rhinehart*, 894 F.3d at 738.

Jordan asserts that he served as a healthcare administrator and was not involved in Baker's treatment or diagnosis. [DE 42-4 at 331]. Instead, Jordan oversaw the administration of health services to inmates at KSR. [*Id.*]. Jordan would assist inmates in getting the necessary healthcare appointments. [DE 125-12, Jordan Dep. Tr. at 1571]. Jordan acknowledged that people who identify as transgender were considered a vulnerable population. [*Id.*]. If someone in that population requested medical care, then he would ensure that care was provided. [*Id.*].

Baker contends that Jordan knew she fit into this "vulnerable population" of inmates who identify as transgender and deliberately chose to ignore the risks posed to her health and safety. [DE 125 at 1425]. Jordan or his assistant would have attended the October 2017 TLOC Committee meeting regarding Baker's gender-affirming care. [*Id.*]. Jordan also personally interviewed Baker in relation to Grievance 17-1355. [DE 125-111 at 1564]. Before this interview, Jordan reviewed Baker's medical records, which reflected that Baker had been diagnosed with GID. [DE 125-2]. Accordingly, there is circumstantial evidence that would allow a reasonable jury to find that Jordan was aware of Baker's GID diagnosis. *Liberty Lobby*, 477 U.S. at 252.

In response to Grievance 17-1355, Jordan noted that Baker was scheduled to see her primary care provider for evaluation for gender-affirming care. [*Id.*]. However, there is no evidence that Baker was ever evaluated for gender-affirming care at that appointment with Nurse Ingram. [DE 125-2 at 1460]. Jordan also testified that Ingram could only address whether Baker's body could handle hormone therapy, not whether Baker suffered from GID. [DE 125-12, Jordan Dep. Tr. at 1579–83]. Jordan explained that an inmate would not be evaluated by a provider like Ingram until they had been diagnosed with gender dysphoria. [*Id.* at 1572]. A reasonable juror could conclude from this evidence that Jordan knew tBaker suffered from GID and failed to ensure she was evaluated for gender-affirming care during her visit with Ingram. On the other hand, a reasonable juror could also conclude that Jordan believed Baker did not suffer from GID and intentionally sent her to a medical provider who could not provide treatment. In either scenario, a reasonable jury could find that Jordan acted with deliberate indifference because Jordan did not ensure that Baker received care for a serious medical condition. *Liberty Lobby*, 477 U.S. at 252.

### C.  Young's Qualified Immunity Defense

Young briefly argues that because she has not violated Baker's constitutional rights, she is entitled to qualified immunity.  [DE 121-1 at 1118-19].

In moving for summary judgment based on qualified immunity, a defendant must first show "facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).  The burden then shifts to the plaintiff to show "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Est. of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).  If "undisputed facts show that the defendant's conduct did indeed violate clearly established rights[,]" or "if there is a factual dispute . . . involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights[,]" a court must deny summary judgment. *Gardenhire*, 205 F.3d at 311 (quoting *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir. 1988) (citations omitted)).

Young and Baker tacitly agree that whether Young is entitled to sovereign immunity is directly related to whether the Court finds that Young may have violated Baker's constitutional rights.  [DE 125 at 1436–37; DE 127 at 1698].  It is well-established that "deliberate indifference to a prisoner's medical needs can amount to a constitutional violation." *Parsons*, 491 F. App'x at 602.  Therefore, based on the Court's analysis above, Young is not entitled to qualified immunity.

### D.  Official Capacity Claims Against Brinker and Williams

Brinker and Williams assert various defenses that related to their status in this case.  First, Williams argues that Baker is not entitled to monetary damages against him because he is a party

to this case only in his official capacity.  [DE 121-1 at 1119].  In response, Baker contends that any claim against Williams or Brinker has only been made against them in their official capacities. [DE 125 at 1437].  Brinker and Williams can only be subject to prospective injunctive relief as opposed to monetary damages.  *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974) ("Though a § 1983 action may be instituted by public aid recipients such as respondent, a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief[.]").  Baker states that she does not seek monetary damages from Williams or Brinker.  [*Id.*].  Accordingly, any dispute about monetary damages related to Williams or Brinker is moot.

Next, Brinker asserts that Baker's official capacity claim is actually against Defendants' then-employer, Correct Care Solutions, LLC.  [DE 122 at 1350].  In response, Baker argues that Brinker and Williams are the appropriate defendants because the Court must have a must have a mechanism to order KDOC and Wellpath to comply with its orders.  [DE 125 at 1438].

Defendants base their argument on *Monell v. New York City Dep't of Soc. Servs*. 436 U.S. 658, 691 (1978), which holds that governmental entities sued in § 1983 actions, "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory."  However, the policy or custom requirement articulated in *Monell* only applies to municipalities and has no applicability to state officers who are immune from suit for damages but susceptible to suit under *Ex Parte Young* for injunctive relief." *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, at *3 (6th Cir. Sept. 10, 2020) (quoting *Rounds v. Clements*, 495 F. App'x 938, 941 (10th Cir. 2012)).  In his reply, Brinker concedes that *Monell* does not apply under these circumstances and puts forward no further arguments on this issue.  As a result, the Court finds Brinker's  defense inapplicable.

20

Finally, Brinker and Williams briefly argue that Baker is not entitled to a permanent injunction.  [DE 121-1 at 1119; DE 122 at 1354].  Yet Defendants do little more than state the elements for a permanent injunction.  The Sixth Circuit has held that "arguments adverted to in only a perfunctory manner, are waived."  *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) (citing *Caudill v. Hollan*, 431 F.3d 900, 915 n. 13 (6th Cir.2005)).  Therefore, the Court will not entertain this defense without additional arguments on the merits.  For these reasons, Defendants' Motions for Summary Judgment [DE 121-1; DE 122] are **DENIED**.

### IV.    <u>CONCLUSION</u>

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.      Defendants' Motions for Summary Judgment [DE 121-1; DE 122] are **DENIED**; and

2.      The parties' Joint Motion to Hold Trial Deadlines in Abeyance [DE 132] is **DENIED AS MOOT**.  The trial will remain scheduled for February 6, 2023, unless the criminal case scheduled for that same day proceeds.  If the criminal case proceeds, then this trial will commence as soon as the criminal trial ends or on February 13, 2023.

Rebecca Grady Jennings, District Judge

United States District Court

December 15, 2022